OPINION OF THE COURT
Bernard F. McCaffrey, J.
When reduced to its essence, the principal issue in dispute in this action is whether the reduction of tax rates established by the Tax Reform Act of 1986 affected the deductibility of maintenance payments. Upon review, the court finds the answer to be in the negative.
The parties to this postjudgment matrimonial proceeding were divorced pursuant to a December 18, 1985 divorce judgment, amended March 2, 1986, which incorporated but did not *96 merge a December 27, 1985 stipulation of settlement. In accordance with article VIII (b) of the aforementioned stipulation, commencing January 1, 1986 the plaintiff was obligated to pay the defendant the sum of $4,166.66 in monthly maintenance for the next 14 years or until the death of either party. It is undisputed that at the time the plaintiff was in the 50% tax bracket and therefore paid an after-tax amount of $25,000 per year.
Thereafter, paragraph (d) of article VIII provides in its entirety that: "It is the specific agreement and understanding of the parties that the payments provided in paragraph (b) of this Article are deemed by the parties to be alimony and maintenance payable to the Wife and deductible by the Husband pursuant to the Internal Revenue Code as amended by the Domestic Relations Tax Reform Act of 1984. The Wife agrees to report said payments as income and acknowledges that the Husband is entitled to deduct same as alimony and maintenance payments. In the event of a change in the tax laws which alters these payments so as to affect the Husband’s right to deduct the payments from his income, the parties shall modify the amount of the payments taking the tax effect created by the change in the law into account in making such modification. ”
Pursuant to article XX any such modification is required to be in writing, duly subscribed and acknowledged with the same formality as the parties’ agreement, or by court order or judgment.
Following Congress’ enactment of the Tax Reform Act of 1986, a dispute arose concerning the meaning of article VIII (d). Simply put, plaintiff contends that the reduction of his 1987 tax rate from 50% to 38%, and the corresponding decrease in his tax benefits, compels the downward modification of his monthly maintenance obligation to maintain an after-tax payment of $25,000. Alternatively, it is alleged that in the absence of such an adjustment, the defendant will reap a substantial tax benefit.
This is inaccurate. Plaintiffs maintenance obligation remains $4,166.66 per month or approximately $50,000 per year. While it is true that as the result of the change in tax rates defendant, like millions of other taxpayers, now pays less tax on her income, this is not contrary to the parties’ agreement.
The stipulation explicitly and unambiguously provides that modification is warranted only in the event of a change in the *97 law concerning deductibility. It is axiomatic, however, that the change in tax rates did not affect deductibility (see, Internal Revenue Code [26 USC] § 71).
Moreover, there is nothing in the stipulation which limits plaintiff to a posttax maintenance obligation of $25,000 per year. Nor may a court imply a term the parties themselves failed to insert (Mitchell v Mitchell, 82 AD2d 849 [2d Dept 1981]; Pica v Pica, 96 AD2d 836 [2d Dept 1983]).
Plaintiff has not sought downward modification based upon "extreme hardship” or the inability to pay (see, Domestic Relations Law § 236 [B] [9] [b]; Wells v Wells, 130 AD2d 487) but rather requests modification due to an indirect decrease in his tax benefits. Yet, having deliberately chosen to classify all payments as maintenance for tax purposes, the plaintiff must now abide by the adverse consequences wrought by an unanticipated change in the tax code.
However, even assuming, arguendo, that plaintiff’s interpretation of the stipulation is correct and that modification is therefore necessary, his unilateral suspension or adjustment of maintenance is in direct abrogation of the law as well as article XX of the parties’ agreement. Such behavior cannot be countenanced.
Accordingly, defendant’s application pursuant to Domestic Relations Law §§ 244 and 244-a for arrears is granted. Therefore, commencing September 1, 1988 plaintiff is directed to reinstate payments of $4,166.66 per month as agreed. In addition thereto, any arrears should be paid within 60 days from the service upon him of a copy of this order.
The requests for contempt and attorney’s fees are denied. Defendant’s rhetoric notwithstanding, there is no evidence to indicate that plaintiff’s actions were either willful or contumacious.
Plaintiff’s cross motion to modify custody pursuant to Domestic Relations Law § 240 cannot be determined upon the parties’ conflicting affidavits and requires a hearing to resolve (Audubon v Audubon, 138 AD2d 658; Biagi v Biagi, 124 AD2d 770).
Therefore, with the agreement of counsel, the court hereby schedules a September 1, 1988, 9:30 a.m., conference in this matter to review the expert’s reports and proceed with a hearing, if necessary.